### JENSEN v. MATSON NAV. CO. et al.
Admiralty No. 381.

District Court, Hawaii.
May 29, 1947.

Richard D. Welsh, of Honolulu, T. H., for libelant.

Vitousek, Pratt & Winn, of Honolulu, T. H., for respondent.

McLAUGHLIN, Judge.

This is a suit in personam under the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq. It was originally instituted against the Matson Navigation Company but by amendment the United States was later made a party respondent. Upon exceptions the suit was dismissed against the United States as not having been brought against it within the time limited by statute. 46 U.S.C.A. § 1303(6); 70 F.Supp. 1020.

Accordingly this trial was had to determine what, if any, liability upon the facts rested upon the remaining respondent.

From the evidence, in conformity with Admiralty Rule 46½, 28 U.S.C.A. following section 723, the following are the

### Findings of Fact.

1. That in the year 1944 the libelant, Alfred Jensen, a citizen of the United States of America and a resident of the Territory of Hawaii, purchased a wax museum from one Friedman in the city of Seattle, Washington, the purchase price being in the vicinity of $8,000 and Friedman undertaking to have the goods shipped to Honolulu, Territory of Hawaii by Universal Transcontinental Corporation.

2. Thereafter, the goods were packed in boxes or barrels and sent by rail to San Francisco and ultimately loaded upon the Steamship "Dunham Wright," which left San Francisco in the latter part of January 1945 and arrived in Honolulu around February 3, 1945.

3. An order bill of lading was issued to Universal Transcontinental Corporation, as shipper, dated January 18, 1945, by "Matson Navigation Company, as Agent for the Master," said bill of lading containing the words "Warship-Shortblading 12–15–42" in the upper left hand margin and containing various references to War Shipping Administration, as well as a notation on the back thereof, that the Bill "shall be subject to and governed by the terms of the Uniform Bill of Lading (Warship-lading 7–1–42) adopted by General Order No. 16 of the Administrator, War Shipping Administration, July 4, 1942 * * *" and a further note that copies of the same could be obtained upon application to the War Shipping Administration, Washington, D. C., or to any of its District Offices or to the Agent of the Master at the port of shipment or the port of discharge. The description of the cargo and contents "as given by shipper" on the Bill of Lading were "40 Bxs & Crts Wax Museum PCS."

4. That said wax museum consisted of various figurines molded in colored wax and depicting various portions of human anatomy, most of the figurines being enclosed in glass show cases, the four sides and top being glass and the bottom being wood; that the figurines were affixed by glue or similar substance to a wooden base extending into the figurine, and the base, in turn, attached by screws to the wooden bottom of the show case; that said museum also included about 100 objects made of plaster being for the most part faces of various racial types; that one of said figur-

ines was of an entire human being, all other figurines varying in size so as to require glass cases extending from around six inches in height and/or width to three feet.

5. That said vessel "Dunham Wright" at the time of making said trip to Hawaii was owned by the United States of America under the supervision of War Shipping Administration and had been allocated to Weyerhaeuser Steamship Company for operation; that Matson Navigation Company was acting as berth agent which included the duties of loading and discharging the cargo, manifesting the same, billing the freight, making out bills of lading, dock receipts, etc.

6. That by Executive Order No. 9054, 50 U.S.C.A.Appendix, § 1295 note, dated February 7, 1942, the War Shipping Administration was created and the Administrator thereof was directed to control the operation, purchase, charter, requisition and use of all ocean going vessels operating under the United States Flag, except for certain vessels not involved herein.

7. That upon arrival of said vessel in Honolulu said cargo was discharged onto Pier 11 and thence taken by a truck of the Air Flo Express Company to a warehouse on Queen and Ward Streets in Honolulu, about one and a half miles from said Pier 11; that the driver of said truck requested the dock clerk of Castle & Cooke, Limited, a Hawaiian corporation and general agents for Matson in Hawaii, to note on the delivery certificates that the veneer (plywood) sides of crate Nos. 5, 11 and 22 were punctured on the side; that crate Nos. 20, 29 and 39 were intact but contents rattling; that crate No. 30 was broken and contents rattling and barrel No. 23 had a broken top. Such notations were made, said certificates being the usual Matson forms but also containing the typed words "a/c Agents WSA," that a copy of said certificates was given to the libelant as consignee.

8. Upon delivery of the 40 crates to the warehouse, about 15 were unpacked and various damage to the wax figurines, plaster models and glass cases discovered. An inspector of Castle & Cooke Terminals, Ltd., the stevedoring subsidiary of Castle & Cooke, Ltd., was called and the balance of the crates was unpacked in his presence. Damage to the cargo was general throughout the entire 40 crates.

9. War Shipping Administration at no time has maintained a claims office in the Territory of Hawaii, all claims being handled by Matson, as its agents, by Castle & Cooke, Limited, agents for Matson.

10. Formal claim was filed on behalf of libelant by his proctor in November 1945. The libel was filed on January 25, 1946, no satisfactory settlement of the claim having been effected.

11. Under published tariff rates in effect at that time, wax objects would normally be shipped at the rate specified on the Bill of Lading, to-wit, $8.25 per 40 cubic feet or per ton. Said rates also provided that "clay products" could be shipped at $8.25 with the shipper assuming risks of damage or at $11.25 with the carrier assuming the risks. Plaster objects similar to those here involved, such as church statutes, customarily are considered as "clay products".

12. There were no markings on any of the crates and no indication on the Bill of Lading that the contents of the crates included plaster or clay products or glass.

### Comment.

The libelant has clearly suffered damage. Assuming that the articles were in good condition when packed for shipment—as to which there was no showing—somewhere along the line there was undoubtedly negligence either by the packer or the carriers by land, rail and sea.

Again assuming that liability could as to the wax figures be placed upon this respondent, I do not believe that proof that the goods were accepted by it under a clear bill of lading is in and of itself sufficient to fix liability. All that the clear bill means is that the goods were received in apparently good order as judged from the appearance of the crates and the handling thereof. It is not proof that each crate was first opened and the condition of the contents inspected.

Upon the same assumption there would in any event be no liability upon

the respondent as to the unidentified plaster objects or glass showcases, for in the absence of disclosure these articles went at the same rate as the declared goods which here was the rate under which the shipper assumed the risk.

In any event, however, the libelant cannot recover here upon these facts from this respondent, for it is not the party liable. At the time in question the vessel was owned by the United States, operated by the War Shipping Administration, and the Matson Navigation Company was berth agent for the War Shipping Administration. Misconceiving his remedy, libelant advances the notion that the Matson Navigation Company misled him to his detriment by not disclosing its agency position and must therefore be held responsible, as when it did disclose this it was then too late to sue the United States.

Neither the facts nor the law sustain this theory. The libelant knew the law under which the War Shipping Administration was created, the First War Powers Act of 1941, § 1, 50 U.S.C.A.Appendix, § 601, and Executive Order No. 9054, 50 U.S.C.A.Appendix, § 1295 note, and that all domestic ocean vessels could be taken by the Government. And here, additionally libelant either knew or should have known from the face of the bill of lading and the reverse side thereof as well that the respondent was acting as agent for the War Shipping Administration.

### Conclusions of Law.

1. No liability attaches to the carrier as to the damage to the plaster objects in view of the failure of the shipper to disclose the nature of the same to the carrier and the consequent carriage of the same at the lower rate under which the shipper assumes the risks of damage.

2. No liability attaches to the carrier as to the damage to the glass cases in view of the failure of the shipper to disclose the nature of the same to the carrier.

3. As to the wax objects, there is only a presumption from the clear Bill of Lading that the same were received by the carrier in good condition, and the evidence is not entirely satisfactory that the same were properly packed.

4. That no evidence was adduced to support the prayer in the libel for $1,825 representing the value of objects broken beyond repair and of loss of use.

5. Regardless of the foregoing, even if liability exists, the respondent, Matson Navigation Company, as mere berth agent of the United States of America, is not the party liable. Liability, if it exists, exists against the United States as owner or charterer of the vessel involved.

6. There is no merit to the contention of the libelant that he was misled by Matson; as a matter of fact as disclosed by the Bill of Lading and as a matter of common knowledge the libelant was chargeable with notice that the principal in this instance was the United States acting under War Shipping Administration and that suit could be brought by him under the provisions of the Carriage of Goods by Sea Act against the United States.

7. A decree in conformity with this decision, in favor of the respondent, with costs, will be signed on presentation.